IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| JOSHUA COLONNA JONES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TONY LAWSON, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 1:22-cv-00172-LKG <br><br> Dated:  August 18, 2023 |

## MEMORANDUM OPINION

**I.     INTRODUCTION**

In this civil action, Plaintiff *pro se*, Joshua Colonna Jones, alleges excessive use of force claims against Defendants, Officer Tony Lawson and the Frederick Maryland Police Department ("FPD"), arising from a violent encounter that Plaintiff had with Officers from the FPD on July 22, 2021.  ECF Nos. 1, 3, 5, 11 and 32-1 at 5.  Defendants have moved to dismiss the complaint, or, alternatively, for summary judgment, pursuant to Fed. R. Civ. 12(b)(6) and 56.  ECF Nos. 32 and 32-1.  The motion is fully briefed.  ECF Nos. 35, 36, 38, 42.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2021).  For the reasons set forth below, the Court **GRANTS** Defendants' motion and **DISMISSES** the complaint.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**[1]

**A.     Factual Background**

In this civil action, Plaintiff *pro se*, Joshua Conlonna Jones, alleges excessive use of force claims against Defendants, Officer Tony Lawson and the Frederick Maryland Police Department, arising from a violent encounter that Plaintiff had with Officer Lawson on July 22, 2021.  ECF Nos. 1, 3, 5, 11 and 32-1 at 5.

---

[1] The facts recited in this memorandum opinion are taken from the complaint as supplemented; Defendants' dispositive motion to dismiss; and memorandum in support thereof.

Plaintiff is an inmate currently incarcerated in Maryland's Western Correctional Institution. ECF No. 32-1 at 1.

Defendant the Frederick Police Department is the law enforcement organization that provides police services to the City of Frederick, Maryland. ECF No. 32-1. Defendant Officer Tony Lawson is an Officer of the FPD, who holds the rank of Officer First Class. *Id*.

<u>The July 22, 2021, Incident</u>

This dispute arises from a violent encounter that Plaintiff had with Officer Lawson on July 22, 2021, while Plaintiff visited the Frederick Rescue Mission. *Id*.

As background, the Frederick Rescue Mission is an organization that serves warm meals to homeless individuals. ECF No. 32-4 at 1. On July 22, 2021, Plaintiff visited the mission's Beacon House, located at 419 W. South Street, Frederick, Maryland. *Id.*; *see also* ECF No. 1. While Plaintiff was waiting in line to receive a meal, Beacon House staff informed Plaintiff that shoes were required to be served. ECF No. 32-4 at 1-2. Although the staff at the mission offered Plaintiff shoes to wear, he rejected the offer and stated his intent to enter the mission without wearing shoes. *Id*. After being directed again by the staff to put on shoes, Plaintiff allegedly responded to the staff with threatening comments. *Id*.

It is undisputed that, shortly thereafter, Officer Lawson arrived at Beacon House during a "routine parole check," and that he was approached by a staff member who informed him that Plaintiff was "being disorderly." ECF No. 32-1 at 17; Def. Ex. E at ¶ 2 (Lawson Affidavit). It is also undisputed that, when Officer Lawson approached Plaintiff, Plaintiff was raising his hand and holding his phone. ECF No. 32-1 at 18; *see also* Def. Ex. B at 6:48:20 (Beacon House security video recording). Officer Lawson states in his sworn affidavit that, when he first observed Plaintiff, Plaintiff was being loud, using profanity, holding up a cell phone and Plaintiff was not wearing any shoes. Def. Ex. E at ¶ 4. Officer Lawson also states that he ordered Plaintiff to leave the property twice, and that Plaintiff refused to do so. *Id*.

It is undisputed that Officer Lawson then grabbed Plaintiff by placing his right hand on Plaintiff's left arm. ECF No. 32-1 at 18; *see also* Def. Ex. B at 6:48:28-31. A security camera video recording of this encounter shows that, thereafter, Plaintiff spun out of Officer Lawson's grasp and Officer Lawson alleges that Plaintiff also said, "don't touch me." Def. Ex. B at 6:48:28-31; ECF No. 32-1 at 18.

This video recording also shows that Officer Lawson again tried to grab Plaintiff and that Plaintiff struck Officer Lawson on the head and neck with his right hand.[2] Def. Ex. B at 6:48:28-31.  It is undisputed that, thereafter, Officer Lawson struck Plaintiff with several closed fist strikes to Plaintiff's head and torso.  *Id*.  It is also undisputed that Officer Lawson wrapped his arms around Plaintiff and brought Plaintiff down to the ground.  *Id*. at 6:48:33.

Officer Lawson states in his affidavit that Plaintiff continued to resist efforts to be placed into handcuffs once he was on the ground.  Def. Ex. E at ¶ 7.  In this regard, Officer Lawson states in his affidavit that Plaintiff attempted to bite him while he was applying handcuffs.  *Id*. at ¶ 2.  It is undisputed that Officer Lawson deployed pepper spray to Plaintiff's face in order to effectuate an arrest.  *Id*. at ¶ 7; Def. Ex. B at 6:48:56; ECF No. 1.

Officer Lawson then handcuffed Plaintiff.  Def. Ex. E at ¶ 7; Def. Ex. B at 6:48:56.  The video recording of the July 22, 2021, Incident also shows that Officer Lawson sat on Plaintiff while applying the handcuffs to Plaintiff's wrists.  Def. Ex. B at 6:48:56.  It is undisputed that Officer Lawson remained seated astride of Plaintiff after applying the handcuffs.  Def. Ex. E at ¶ 8; ECF No. 1.  In this regard, the video recording of the July 22, 2021, Incident shows that Officer Lawson remained seated astride of Plaintiff after applying the handcuffs for approximately one minute.  Def. Ex. B at 6:48:56-49:19; 6:49:55.  Officer Lawson alleges that he remained seated astride of Plaintiff to maintain control of Plaintiff while he gather his equipment, and particularly his radio, and place it in order.  Def. Ex. E at ¶ 8.

Officer Lawson also states that he then stood and attempted to move Plaintiff out of the pepper spray area, but Plaintiff remained uncooperative.  *Id*. at ¶ 9.  Officer Lawson's statement is corroborated by the video recording of the July 22, 2021, Incident which shows Officer Lawson standing up after retrieving his equipment and attempting to move Plaintiff.  Def. Ex. B at 6:51:13-6:51:58.

---

[2] Officer Lawson never activated his body-worn camera during this encounter.  ECF No. 32-1 at 18 ¶ 2.  But, his encounter with Plaintiff was captured by a security camera located at Beacon House.  Def. Ex. B.  Officer Lawson states in his Affidavit that he had not activated his body worn camera due to the rapidity of the escalation of the July 22, 2021, Incident.  Def. Ex. E at ¶ 6.  But, there is other body worn camera footage that records the scene immediately after Plaintiff's encounter with Officer Lawson.  *See generally*, Def. Ex. D.

3

The parties dispute whether Officer Lawson struck Plaintiff after he was handcuffed. In this regard, Plaintiff alleges that Officer Lawson struck him in the head several times after he was handcuffed. ECF No. 3 at 1. But Officer Lawson denies that he struck Plaintiff once Plaintiff was handcuffed. ECF No. 32-1; Def. Ex. E at ¶ 15.

The video recording of the July 22, 2021, Incident does not fully resolve this dispute. Notably, the video recording does not provide a clear view of the interaction between Officer Lawson and Plaintiff during the seconds immediately after Plaintiff was handcuffed. Def. Ex. B. at 6:48:56-49:19. But subsequent moments are more clearly captured by this video recording. During those moments, the video recording does not show that Officer Lawson struck Plaintiff after Plaintiff was handcuffed. *Id.* at 6:50:15 – 51:13.

Officer Lawson's contention that he did not strike Plaintiff once Plaintiff was handcuffed is also corroborated by the sworn affidavit of Pastor Carlton Hill, the Director of Programs and Recovery at the Frederick Rescue Mission. Def. Ex. C (Affidavit of Pastor Carlton Hill). Pastor Hill states that he was present at Beacon House on July 22, 2021, and that he encountered Plaintiff while Plaintiff waited in line for breakfast. *Id.* at ¶ 3. Pastor Hill also states that he assisted Officer Lawson and one other individual, in taking Plaintiff to the ground, so that Officer Lawson could effectuate an arrest. *Id.* at ¶ 7. In addition, Pastor Hill states that he was in close proximity to Officer Lawson and Plaintiff at this time and did not observe Officer Lawson strike Plaintiff in the head after Plaintiff was handcuffed. *Id.* at ¶ 8.

Officer Lawson states in his affidavit that Plaintiff continued to be uncooperative and refuse to stand or walk after being handcuffed. Def. Ex. E at ¶ 9. This statement is also corroborated by the video recording showing that Plaintiff refused to stand-up and walk when Officer Lawson and other FPD Officers tried to move him. Def. Ex. B at 6:52:00.

It is undisputed that additional FPD law enforcement units and emergency medical services arrived at the scene after Officer Lawson handcuffed Plaintiff. *Id.* After being decontaminated from the pepper spray by water, Plaintiff was transported by emergency medical services to Frederick Health Hospital. ECF No. 32-1 at 3.

Thereafter, Plaintiff entered an Alford Plea on criminal charges arising from the July 22, 2021, Incident for assault in the second degree on a law enforcement officer and resisting arrest. *Id.* at 1. Plaintiff is currently serving his sentence and he is incarcerated at Maryland's Western Correctional Institution. *Id.*

### B.  Procedural Background

Plaintiff commenced this matter on January 24, 2022, and he subsequently supplemented the complaint on February 10, 2022, April 21, 2022, April 29, 2022, and July 1, 2022.[3] ECF Nos.1, 3, 4, 5 and 11.

On October 18, 2022, Defendants filed a motion to dismiss, or, in the alternative, for summary judgment. ECF Nos. 32 and 32-1. On October 27, 2022, and November 1, 2022, Plaintiff filed a response in opposition to Defendants' motion. ECF Nos. 35, 36 and 38. On December 16, 2022, Defendants filed a supplement in support of their dispositive motion. ECF No. 42.

Defendants' dispositive motion having been fully briefed, the Court resolves the pending motion.

## III.  LEGAL STANDARDS

### A.  *Pro se* litigants

Plaintiff is proceeding in this matter without the assistance of counsel. And so, the Court must construe the complaint liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980). But, in doing so, the Court cannot disregard a clear failure to allege facts setting forth a cognizable claim. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012); *see also Bell v. Bank of Am., N.A.*, No. 13-0478, 2013 WL 6528966, at *1 (D. Md. Dec. 11, 2013) ("Although a *pro se* plaintiff is general[ly] given more leeway than a party represented by counsel . . . a district court is not obliged to ferret through a [c]omplaint . . . that is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.") (quotations omitted). And so, if plaintiff fails to allege sufficient facts setting forth a cognizable claim, the Court must dismiss the complaint.

---

[3] On July 1, 2022, Plaintiff dismissed Officer Jason Lando as a named Defendant. ECF No. 11 at 1.

### B. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)).

### C. Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th

Cir. 1992), *cert. denied,* 507 U.S. 972 (1993).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp.*, 477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id.* at 323.  And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc*., 108 F.3d 529, 536 (4th Cir. 1997).  And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

**D.     Section 1983 And Excessive Use Of Force Claims**

Title 42, United States Code, section 1983 provides a mechanism for individuals who have had their constitutional rights violated to seek a remedy against individual state actors.  *See* 42 U.S.C. § 1983 (providing that if any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives a United States citizen of any constitutional right, that person may be liable in a suit for money damages).  Section 1983 also permits a plaintiff to bring a claim directly against a municipality if the municipality causes a deprivation of a constitutional right through an official policy or custom.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

The Fourth Amendment "prohibits police officers from using force that is 'excessive' or not 'reasonable' in the course of making an" otherwise lawful arrest.  *Meyers v. Balt. Cnty.*, 713 F.3d 723, 732 (4th Cir. 2013) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)).  In this regard, the United States Supreme Court has held that excessive use of force claims are analyzed under an "objective reasonableness" standard.  *Graham*, 490 U.S. at 388.  The Fourth Circuit has also held that, in "considering the reasonableness of an officer's actions, [the Court] must consider the facts at the moment that the challenged force was employed."  *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (citation omitted).  And so, the Court must judge an officer

defendant's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

The Supreme Court has also held that determining whether a defendant officer used an excessive level of force requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (citation and internal quotation marks omitted). Specifically, this Court should consider three factors in assessing an excessive use of force claim: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation omitted). The Supreme Court has cautioned, however, that the Court should not "apply this standard mechanically," because there could be other "types of objective circumstances potentially relevant to a determination of excessive force." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Given this, the Court's analysis of an excessive use of force claim ultimately turns on whether "the totality of the circumstances" justified the level of force applied. *Smith*, 781 F.3d at 101 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

In this regard, the Fourth Circuit has recognized that an assault that did not result in any significant physical harm can constitute criminal activity under the first *Graham* factor. *See Wilson v. Flynn*, 429 F.3d 465, 468 (4th Cir. 2005) (noting that, even without any evidence of the assault causing physical harm, a reasonable officer could still conclude that the suspect's conduct evidenced an intent to hurt). The Fourth Circuit has also held that officers using "unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and are not entitled to qualified immunity." *Jones v. Buchanan*, 325 F.3d 520, 532(4th Cir. 2003). But the Fourth Circuit has also recognized that "[a]n efficient, lawful arrest of a resisting suspect that causes the suspect to suffer only de minimis injuries does not constitute an excessive use of force." *Pegg v. Herrnberger*, 845 F.3d 112, 120 (4th Cir. 2017).

### E. Qualified Immunity

Lastly, the Supreme Court has explained that the "doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)).  And so, "[t]he doctrine of qualified immunity protects police officers and public officials from claims of constitutional violations 'for reasonable mistakes as to the legality of their actions.'"  *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir. 2012) (citation omitted).

In this regard, the Fourth Circuit has held that courts should apply a two-step test when determining whether a defendant is entitled to qualified immunity.  *See Wilson v. Prince George's Cnty.*, 893 F.3d 213, 219 (4th Cir. 2018); *see Pearson*, 555 U.S. at 232.  First, the Court inquires whether "the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the [defendant's] conduct violated the plaintiff's constitutional right." *Wilson*, 893 F.3d at 219 (citation omitted).  Second, the Court must determine whether "the right at issue was 'clearly established' at the time of [the defendant's] conduct."  *Id.* (citation omitted).  In "cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," however, district courts have discretion to resolve the matter at the second step without reaching a conclusion on the first.  *Pearson*, 555 U.S. at 237.

## IV.   LEGAL ANALYSIS

Defendants have moved to dismiss this matter, or, alternatively, for summary judgment in their favor on Plaintiff's claims upon the grounds that: (1) Officer Lawson is entitled to qualified immunity, because his use of force was objectively reasonable under the circumstances presented; (2) Plaintiff's claim that Officer Lawson struck him in the head after he was handcuffed is unsubstantiated; (3) Plaintiff fails to state a claim for selective use of force based on racial discrimination; and (4) the undisputed material facts show that there was no sexual assault of Plaintiff.  *See generally*, ECF No. 32-1.

Plaintiffs' handwritten responses in opposition to Defendants' dispositive motion are difficult to follow.  ECF Nos. 35 and 36.  But, Plaintiff generally argues that the Court should not dismiss his claims.  *Id*.  And so, Plaintiff requests that the Court deny Defendants' motion.  *Id*.

For the reasons that follow, Plaintiff cannot bring his claims against the Frederick Police Department, because the FPD is not a cognizable legal entity.  A careful reading of the complaint as supplemented also shows that Plaintiff fails to state a plausible selective use of force claim and there is no evidence before the Court to support Plaintiff's allegation that Officer Lawson sexually assaulted him.  In addition, the undisputed material facts of this case show that Officer Lawson's use of force to effectuate Plaintiff's arrest on July 22, 2021, was objectively reasonable

9

under the totality of circumstances presented in this case. And so, the Court GRANTS Defendants' dispositive motion and DISMISSES the complaint.

### A. The Court Must Dismiss Plaintiffs Claims Against FPD

As an initial matter, Defendants persuasively argue that the Court should dismiss Plaintiff's claims against the FPD. The FPD is the law enforcement organization that provides police services to the City of Frederick, Maryland and it is not a legally cognizable entity that can be sued by Plaintiff. *See Hines v. French*, 157 Md. App. 536, 573, 852 A.2d 1047, 1068 (2004) (holding the Baltimore County Police Department is not a legally cognizable entity subject to suit in its own name, and any claims made against the police department are essentially claims against Baltimore County, therefore naming the police department as a separate defendant was improper and unnecessary). Given this, the Court must DISMISS Plaintiff's claims against the FPD. Fed. R. Civ. P. 12(b)(6).

### B. Plaintiff Fails To State A Plausible Selective Use Of Force Claim And To Establish A Sexual Assault

To the extent that Plaintiff asserts a selective use of force claim in this civil action, Defendants also persuasively argue that this claim should be dismissed for failure to state a claim. Plaintiff alleges in the complaint that Officer Lawson was motivated by racial animosity towards him during the July 22, 2021, Incident.[4] ECF No. 1. To prevail on a selective enforcement claim, Plaintiff must show: (1) that he was treated differently than those similarly situated and (2) for an impermissible consideration such as race. *Orgain v. City of Salisbury*, 521 F. Supp. 2d 465, 477 (D. Md. 2007), *aff'd in part sub nom. Orgain v. City of Salisbury*, Md., 305 F. App'x 90 (4th Cir. 2008). But, the complaint as supplemented is devoid of any facts to show that Officer Lawson was motivated by racial animus towards Plaintiff during the July 22, 2021, Incident. ECF Nos. 1, 3, 4, 5 and 11. Indeed, other than the fact that Plaintiff is White and Officer Lawson is Black, Plaintiff puts forward no evidence to show racial animus, or to identify comparators that are similarly situated to him to prove this claim. *See Id.* Given this, Plaintiff

---

[4] As Defendants correctly observe, allegations regarding Officer Lawson's subjective state of mind during the July 22, 2021, Incident are not relevant to the Court's the use of force analysis. The Court does not consider the officer's "intent or motivation." *Ellicott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1992) (citing *Graham*, 490 U.S. at 396-97).

fails to state a plausible claim for selective use of force. And so, the Court also DISMISSES this claim. Fed. R. Civ. P. 12(b)(6) and 56.

Plaintiff's claim that Officer Lawson sexually assaulted him during the July 22, 2021, Incident is equally problematic. Plaintiff alleges that Officer Lawson sexually assaulted him, by becoming sexually aroused when sitting on Plaintiff to effectuate the arrest during the July 22, 2021, Incident. ECF No. 1 at 2; ECF No. 5 at 7. But, again, Plaintiff points to no facts or evidence to show that Officer Lawson sexually assaulted him during their encounter. *See generally*, ECF Nos. 1, 3, 4, 5 and 11. Because, Plaintiff fails to identify any evidence to support his claim of sexual assault, the Court also DISMISSES this claim. Fed. R. Civ. P. 12(b)(6) and 56.

      **C.**    **The Undisputed Material Facts Show That Officer Lawson's Use Of Force Was Reasonable**

Turning to the merits of Plaintiff's excessive use of force claim, the undisputed material facts in this matter show that the force employed by Officer Lawson to effectuate Plaintiff's arrest was objectively reasonable under the totality of the circumstances presented in this case.

The United States Supreme Court has held that excessive use of force claims pursuant to the Fourth Amendment should be analyzed under an "objective reasonableness" standard. *Graham*, 490 U.S. at 388. The Fourth Circuit has also held that, in "considering the reasonableness of an officer's actions, [the Court] must consider the facts at the moment that the challenged force was employed." *Smith*, 781 F.3d at 101 (citation omitted). And so, the Court must judge Officer Lawson's use of force in this case "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

In determining whether the use of force was excessive, the Court considers: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation omitted). But the Court should not "apply this standard mechanically," because there could be other "types of objective circumstances potentially relevant to a determination of excessive force." *Kingsley* at 397. And so, the Court must analyze whether "the totality of the circumstances" in this case justified the level of force used in assessing Plaintiff's excessive use of force claim. *Smith*, 781 F.3d at 101 (citing *Garner*, 471 U.S. at 8-9).

The *Graham* factors weigh in favor of finding that Officer Lawson's use of force was objectively reasonable for several reasons.

As an initial matter, the Court observes that, at the moment that the challenged force was employed in this case, the undisputed material facts show that a reasonable officer at the scene would have been objectively aware that: (1) Plaintiff refused to leave the property at Beacon House after several requests that he do so; (2) the Beacon House staff were concerned that Plaintiff had uttered threatening remarks towards the staff; (3) Plaintiff had disobeyed Officer Lawson's lawful order to leave the property; (4) Plaintiff physically resisted Officer Lawson's attempt to escort him from the property; and (5) Plaintiff assaulted Officer Lawson, by striking Officer Lawson's head and neck area with his right hand. *Smith*, 781 F.3d at 101 (holding that, in "considering the reasonableness of an officer's actions, [the Court] must consider the facts at the moment that the challenged force was employed."). It is also undisputed that Officer Lawson employed the following force, thereafter, to effectuate Plaintiff's arrest: (1) Officer Lawson struck Plaintiff with several closed fist strikes to Plaintiff's head and torso; (2) Officer Lawson wrapped his arms around Plaintiff and brought Plaintiff down to the ground; (3) Officer Lawson deployed pepper spray to Plaintiff's face in an attempt to effectuate an arrest; (4) Officer Lawson sat on Plaintiff while applying handcuffs to Plaintiff's wrists; and (5) Officer Lawson remained seated astride of Plaintiff for approximately one minute after Plaintiff was handcuffed. *See generally*, Def. Ex. B.

Given these facts, the first *Graham* factor, the severity of the crime at issue, weighs in favor of finding that Officer Lawson's use of force was objectively reasonable. It is undisputed that Plaintiff committed the crimes of trespass, failure to obey a lawful order, actively resisting an arrest and assault on a law enforcement officer before Office Lawson employed physical force to effectuate Plaintiff's arrest. *See generally*, ECF Nos. 1 and 32-1. While several of these crimes do not involve inflicting any physical harm, the Fourth Circuit has recognized that a suspect's crime may be severe without causing any physical harm under the first *Graham* factor, if the conduct evidenced an intent to hurt. *Wilson v. Flynn*, 429 F.3d 465, 468 (4th Cir. 2005) (observing that, even without evidence of physical harm resulting from an assault, a reasonable officer could conclude that the suspect's conduct evidenced an intent to hurt and, therefore, the crime was severe).

In this case, the unrebutted evidence before the Court shows that Plaintiff assaulted Officer Lawson, by striking Officer Lawson on the head and neck with his right hand, before Officer Lawson employed physical force. Def. Ex. B at 6:48:28-31. The unrebutted evidence also shows that Plaintiff made threats towards the staff at Beacon House while he waited in line, including threatening to physically harm the staff and to blow up the building. Def. Ex. E at ¶ 2; Def. Ex. C at ¶¶ 4, 5. Given this evidence, the Court concludes that, at a minimum, Plaintiff's physical assault of Officer Lawson is a severe crime, because Plaintiff intended to, and did, physically harm Officer Lawson. And so, the first *Graham* factor weighs in favor of finding that Officer Lawson's use of force to effectuate Plaintiff's arrest was objectively reasonable.

The second *Graham* factor, whether Plaintiff posed an immediate threat to the safety of Officer Lawson, or others at the scene, also supports finding that the use of force was objectively reasonable in this case. As discussed above, the unrebutted evidence shows that, before Officer Lawson employed physical force, Plaintiff struck Officer Lawson on the head and neck with his right hand and that Plaintiff also threatened to physically harm the Beacon House staff. Def. Ex. B at 6:48:28-31; 6:48:33. The video recording of the July 22, 2021, Incident also makes clear that Plaintiff was in close proximity to other bystanders waiting outside Beacon House when he engaged in this threatening conduct. *Id*. Given this, the undisputed material facts show that Plaintiff posed an immediate threat to the safety of Officer Lawson, and to others standing nearby, when Officer Lawson employed physical force.

The Court is also satisfied that the use of force employed by Officer Lawson was proportional to the threat posed by Plaintiff and necessary to mitigate this threat. It is undisputed that Officer Lawson employed closed fist strikes and forced Plaintiff to the ground, so that he could restrain and handcuff Plaintiff. Def. Ex. E at 5; ECF No. 1. As the video recording of the July 22, 2021, Incident makes clear, there were several Beacon House staff members and other individuals standing in close proximity to Plaintiff and Officer Lawson when their physical encounter occurred. *See generally*, Def. Ex. B. Given this, the undisputed material facts show that the force employed by Officer Lawson to force Plaintiff to the ground was necessary to mitigate the immediate threat posed by Plaintiff to Officer Lawson and to others.

While a somewhat closer question, the third *Graham* factor, whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight, also supports finding that the force employed in this case was objectively reasonable. The undisputed material facts show that

Plaintiff resisted arrest during his encounter with Officer Lawson for several reasons. First, it is undisputed that Plaintiff struck Officer Lawson after he attempted to escort Plaintiff from the Property. Def. Ex. B at 6:48:28-31. Officer Lawson also states in his affidavit that Plaintiff continued to resist efforts to be placed into handcuffs once he was forced to the ground. Def. Ex. E at ¶ 7. Officer Lawson's account is substantiated by the video recording of their encounter, which shows that several bystanders were needed to assist Officer Lawson, so he could restrain and handcuff Plaintiff. Def. Ex. B at 6:49:00 – 6:49:50.

Officer Larson also states that Plaintiff continued to resist arrest once on the ground, by attempting to bite him. Def Ex. E at ¶ 7. Plaintiff does not appear to dispute this allegation. *See generally*, ECF Nos. 1, 3, 4, 5 and 11. Given this, the unrebutted evidence shows that Officer Lawson deployed pepper spray to Plaintiff's face after Plaintiff continued resist arrest.

The propriety of Officer Lawson's decision to continue to sit astride of Plaintiff after Plaintiff was handcuffed is less clear. The evidence shows that Officer Lawson sat astride of Plaintiff while he applied handcuffs to Plaintiff's wrists. Def. Ex. B at 6:48:56. The video recording of the July 22, 2021, Incident also shows that Officer Lawson continued to sit astride of Plaintiff, for approximately one minute, after Plaintiff was handcuffed. *Id.* at 6:48:56-49:19; 6:49:55. Officer Lawson explains that he remained seated astride of Plaintiff to maintain control of Plaintiff while he gather his equipment, which had been displaced during their physical altercation. Def. Ex. E at ¶ 8.

The video recording of the July 22, 2021, Incident corroborates this statement and shows Officer Lawson gathering his equipment, while seated astride of Plaintiff. Def. Ex. B at 6:50:23 – 6:51:13. The video recording also shows that Officer Lawson stands up immediately after collecting his equipment and that he then attempts to move Plaintiff to a standing position. *Id.* at 6:51:13 – 6:51:58. Given this evidence, and particularly the evidence showing that Officer Lawson remained seated astride of Plaintiff once handcuffed for a brief period of time, the Court does not find the use of force in this regard to be unnecessary, gratuitous, and disproportionate to carry out the Plaintiff's arrest. *Jones*, 325 F.3d at 532; *see also Krell v. Braightmeyer*, 828 Fed. App'x. 155, 158 (4th Cir. 2020) (quoting *Jones*, 325 F.3d at 532).

The Court also observes, as a final matter, that there is no evidence before the Court to substantiate Plaintiff's allegation that Officer Lawson struck him on the head several times after being handcuffed. In this regard, Plaintiff argues that the video recording and body camera

14

footage of the July 22, 2021, Incident show that Officer Lawson struck him with closed fists after he was handcuffed. ECF No. 1 at 2; ECF No. 5 at 7. But, Plaintiff points to no video evidence or other evidence to support this claim. *Id*.

A careful review of the video recording of the July 22, 2021, Incident also reveals that the interaction between Officer Lawson and Plaintiff during the seconds immediately after Plaintiff was handcuffed is obscured from view. Def. Ex. B. at 6:48:56-49:19. But, subsequent video footage does not show that Officer Lawson struck Plaintiff once handcuffed, as Plaintiff suggests. *Id.* at 6:50:15 – 6:51:13.

Officer Lawson's sworn statement that he did not strike Plaintiff after handcuffing Plaintiff is also corroborated by other evidence before the Court. Notably, Pastor Carlton Hill, the Director of Programs and Recovery at the Frederick Rescue Mission, states in his sworn affidavit that he was in close proximity to Officer Lawson and Plaintiff when Officer Lawson handcuffed Plaintiff and he did not observe Officer Lawson strike Plaintiff in the head after Plaintiff was handcuffed. Def. Ex. C at ¶ 8. While Plaintiff disputes the account given by Officer Lawson and Pastor Hill, he must confront this evidence with an affidavit or other similar evidence to show the existence of a genuine issue for trial regarding whether Officer Lawson employed force after he was handcuffed. *See Anderson*, 477 U.S. at 256. Because Plaintiff fails to do so, the Court is satisfied that there is no genuine issue for trial to preclude summary judgment on Plaintiff's excessive use of force claim.

Because the undisputed material facts in this case show that: (1) Plaintiff committed a severe crime during the July 22, 2021, Incident; (2) Plaintiff's posed an immediate threat to the safety of Officer Lawson and others; (3) Plaintiff resisted arrest; and (4) Officer Lawson employed objectively reasonable force to address and mitigate this conduct and to effectuate Plaintiff's arrest, Plaintiff cannot prevail on his excessive use of force claim. *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002) (holding that it is "well established that the right to make an arrest carries with it the right to use a degree of physical coercion or threat thereof to effect the arrest."). For these reasons, the Court GRANTS Defendants' motion for summary judgment on this claim. Fed. R. Civ. P. 56.

V. **CONCLUSION**

In sum, Plaintiff cannot bring his claims against the FPD, because the FPD is not a cognizable legal entity. Plaintiff also fails to state a plausible claim for selective use of force and

his sexual assault claim lacks any evidentiary support. In addition, the undisputed material facts show that Officer Lawson's use of force was objectively reasonable under the totality of circumstances presented in this case. And so, the Court, for the foregoing reasons,

1. **GRANTS** Defendants' motion to dismiss, or, in the alternative, for summary judgment; and

2. **DISMISSES** the complaint.

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge